**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GORAN KOLAREV, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 25-cv-12629 |
| v. | ) | |
| | ) | Judge April M. Perry |
| AMERICAN EXPRESS COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

*Pro se* plaintiff Goran Kolarev ("Plaintiff") alleges that American Express Company

("Defendant") violated the Electronic Fund Transfer Act and Fair Credit Billing Act and also

brings a claim of common law negligence relating to the alleged opening of a fraudulent business

credit card account in his name. Defendant contends that Plaintiff's claims are subject to

mandatory arbitration and has moved to compel arbitration and stay this action. Doc. 29. For the

reasons discussed below, Defendant's motion to compel arbitration is granted.

**BACKGROUND**[1]

Plaintiff was an employee of LG Express Group, Inc. ("LG Express"). Doc. 1 ¶ 12. In

2022, Plaintiff alleges that someone at LG Express opened a business credit card account (the

---

[1] The Court considers both the pleadings and the facts as set forth in the parties' declarations in support of their positions when considering a motion to compel arbitration. *See Kass v. PayPal Inc.*, 75 F.4th 693, 697-99 (7th Cir. 2023) (holding that a plaintiff's sworn declaration that she had never seen an agreement containing the arbitration clause created an issue of fact that required an evidentiary hearing). Plaintiff also filed several notices of supplemental evidence. *See* Docs. 36, 37, 38, 39, 42, 43, 44. Defendant has asked the Court to strike these filings or in the alternative to give Defendant the opportunity to submit a substantive response. Doc. 45. Given that the Court is granting Defendant's motion despite having considered these additional submissions by Plaintiff, there is no need to do either. *See Cleveland v. Porca Co.*, 38 F.3d 289, 297 (7th Cir. 1994) ("[I]t is within the district court's discretion to strike an unauthorized filing.").

"Business Account") with Defendant,[2] naming Plaintiff as a co-signer and the financially responsible party for the Business Account. *Id.* ¶¶ 10-13. Plaintiff further alleges this was done without his knowledge or consent. *Id.* Purchases were subsequently made using the Business Account, and a balance of more than twenty thousand dollars has accrued. Doc. 1 ¶ 20; *id.* at 23.

Plaintiff also alleges that Defendant linked Plaintiff's external checking account to the Business Account and that at least three withdrawals were made from Plaintiff's external account to pay balances on the Business Account without Plaintiff's permission. *Id.* ¶ 15-16. This, Plaintiff contends, violated the Electronic Fund Transfer Act. *Id.* ¶¶ 25-30. Furthermore, Plaintiff argues Defendant violated the Fair Credit Billing Act ("FCBA") by failing to acknowledge its error or conduct a reasonable investigation to resolve the dispute. *Id.* ¶¶ 31-35. Plaintiff also brings a claim for negligence, arguing that Defendant breached its duty of reasonable care in the operation and management of credit accounts by failing to adhere to standard industry practices designed to prevent fraud. *Id.* ¶¶ 36-39.

Plaintiff acknowledges opening a personal account (the "Personal Account") with Defendant in June 2022. *Id.* ¶ 17; Doc. 29-2 ¶ 3, Doc. 34 at 2. Defendant has submitted evidence that it mailed the initial cardmember agreements along with the physical credit cards for both the Personal Account and Business Account to the address provided by Plaintiff when he opened the Personal Account. Doc. 29-2 ¶¶ 4-5. The cardmember agreements for both the Personal Account and Business Account stated that when a cardmember used the account, they agreed to

---

[2] Plaintiff asserts in his briefing that in fact multiple fraudulent accounts have been opened in his name, attaching bank statements with different account numbers but identical balances. Doc. 32 at 2; Doc. 32-6. Defendant has submitted a supplemental declaration from a custodian of records that explains that all of the bank statements provided by Plaintiff link to the same account, and that the account numbers are different only because account numbers change every time a new credit card is issued to the account. Doc. 41-1 ¶¶ 4-6. Given that the complaint only cites one fraudulent account and Plaintiff has not submitted any additional evidence to demonstrate distinct accounts, the Court accepts Defendant's explanation that only one account is at issue.

2

Defendant's terms. *Id.* at 11, 26.  Both agreements further contained arbitration provisions that stated: "You or we may elect to resolve any claim by individual arbitration… If arbitration is chosen by any party, neither you nor we will have the right to litigate that claim in court or have a jury trial on that claim." *Id.* at 17, 31. Claim is defined as:

> any current or future claim, dispute or controversy relating to your Account(s), this Agreement, or any agreement or relationship you have or had with us, except for the validity, enforceability or scope of the Arbitration provision. ***Claim*** includes but is not limited to: (1) initial claims, counterclaims, crossclaims and third-party claims; (2) claims based upon contract, tort, fraud, statute, regulation, common law and equity; (3) claims by or against any third party using or providing any product, service or benefit in connection with any account; and (4) claims that arise from or relate to (a) any account created under any of the agreements, or any balances on any such account, (b) advertisements, promotions or statements related to any accounts, goods or services financed under any accounts or terms of financing, (c) benefits and services related to card membership (including fee-based or free benefit programs, enrollment services and rewards programs) and (d) your application for any account.

*Id.* at 16, 31. The agreements also gave cardmembers the ability to reject the arbitration provision entirely if they sent written notice within forty-five days of their first card purchase. *Id.* at 17, 31.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") authorizes a federal district court to compel a dispute between parties to arbitration if it finds that (1) the parties formed a valid, written agreement to arbitrate; (2) the dispute falls within the scope of that agreement, and (3) a party refuses to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). The FAA requires courts to enforce arbitration agreements according to their terms and puts arbitration agreements on an equal footing with other contracts. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Ordinary principles of state contract law are used to determine whether parties formed an agreement to arbitrate. *First Options of Chi., Inc. v. Kaplan*,

3

514 U.S. 938, 944 (1995). [3] Since arbitration agreements are contracts, a party cannot be required to submit to arbitration any dispute which he has not agreed to submit. *Id.* at 945. That said, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself [should be] resolved in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76 (1989).

In deciding a motion to compel arbitration, courts apply the same standard as is used in deciding motions for summary judgment. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). Specifically, "[a] district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if no genuine dispute of material fact exists as to the formation of the agreement." *Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 618 (7th Cir. 2024). In deciding whether there is any genuine issue of material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (discussing standard used at summary judgment).

## ANALYSIS

### I. Business Account Agreement

Defendant first argues that this dispute must be arbitrated due to the arbitration provision in the cardmember agreement for the Business Account. In arguing that Plaintiff agreed to the arbitration provision, Defendant points out that the information provided to open the Personal Account matched the information provided to open the Business Account. Specifically, the

---

[3] Both agreements provide that "Utah law and federal law govern this Agreement and the Account." Doc. 29-2 at 16, 30. Illinois federal courts sitting in diversity follow Illinois choice-of-law rules, which respect contractual choice-of-law provisions unless the parties' choice of law contradicts Illinois's fundamental public policy. *See Sound of Music Co. v. Minnesota Mining & Mfg. Co.*, 477 F.3d 910, 915 (7th Cir. 2007). Plaintiff does not contest in his opposition memorandum the application of Utah law. Therefore, the Court will apply Utah law in determining whether an agreement was formed.

name, mailing address, email address (goran@lgexpressgroup.com) and IP address from which the two accounts were opened were all the same. Doc. 29-2 ¶ 6. Moreover, payments were made to the Business Account from a bank account Plaintiff acknowledges as his. *Id*. ¶ 7. In response, Plaintiff argues that the Business Account was opened fraudulently using his identifiers, and that the IP address belongs to his employer and anyone there could have used it. Doc. 34 at 2.

The Court finds that there is a genuine dispute of fact as to whether Plaintiff in fact opened the Business Account, and thus whether Plaintiff ever agreed to the arbitration provision in its cardmember agreement. *See Kass*, 75 F.4th at 704 (holding that a genuine dispute of fact was created by plaintiff's denial of receipt of the agreement containing the arbitration provision). Although Defendant's evidence that it sent the arbitration agreement to Plaintiff's name at a mailing address previously provided by Plaintiff as his is compelling, the Court is not allowed to "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Craftwood II, Inc. v. Generac Power Sys., Inc.*, 63 F.4th 1121, 1129 (7th Cir. 2023). Moreover, concluding as a matter of law that Plaintiff had consented to the Business Account's arbitration provision would essentially decide the entire case on its merits prior to any discovery, since Plaintiff's claims are premised on the allegation that the Business Account was fraudulently opened without his consent. *See Hoganberry v. Experian Info. Sols., Inc.*, 703 F. Supp. 3d 854, 861 (N.D. Ill. 2023) ("If Plaintiff is able to prove identity theft, it would be contrary to logic and common sense to enforce terms of a credit application agreement for an account that was opened by Defendant at the request of a defrauder." (internal quotations omitted)). The dispute of fact as to who opened the Business Account means that a trial would be required before enforcing the arbitration provision. *See Deputy v. Lehman Bros.*, 345 F.3d 494, 509-10 (7th Cir. 2003) ("Section 4 [of the FAA] …

5

require[s] the court to hold a trial if the making of the arbitration agreement was in issue."). For these reasons, the Court declines to compel arbitration on the basis of the Business Account's arbitration provision.

### II.  Personal Account Agreement

Defendant also argues this dispute should be arbitrated based upon the Personal Account's arbitration provision. Plaintiff does not dispute that he signed up for the Personal Account or that he made purchases using the associated card. Doc. 1 ¶ 17. Nor has Plaintiff asserted that he rejected the arbitration provision within the forty-five days provided by the terms of the agreement. Utah law provides that a credit agreement is binding and enforceable if "(i) the debtor is provided with a written copy of the terms of the agreement; (ii) the agreement provides that any use of the credit offered shall constitute acceptance of those terms; and (iii) after the debtor receives the agreement, the debtor, or a person authorized by the debtor, requests funds pursuant to the credit agreement or otherwise uses the credit offered." Utah Code Ann. § 25-5-4(2)(e). Given that these elements have been established by Defendant's submitted declarations and not challenged by Plaintiff, the Court concludes that there is no dispute that a valid arbitration agreement exists based upon the Personal Account's cardmember terms.

The next question is whether this dispute falls within the scope of the arbitration provision in the Personal Account's cardmember agreement. When determining an arbitration provision's scope, arbitration "should be ordered unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Exelon Generation Co., LLC v. Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO*, 540 F.3d 640, 646 (7th Cir. 2008) (internal quotations omitted). Where the arbitration provision is broad, only an "express provision excluding a particular grievance from arbitration... [or] the most forceful

evidence of a purpose to exclude the claim from arbitration" can prevent arbitration. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). And courts generally consider arbitration clauses that include language like "relating to" to be "extremely broad and capable of an expansive reach." *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909-10 (7th Cir. 1999); *see also United States v. Liestman*, 97 F.4th 1054, 1061 (7th Cir. 2024) (describing "relating to" as "the broadest of connecting language"), *accord Willow Creek Assocs. of Grantsville LLC v. Hy Barr Inc.*, 501 P.3d 1179, 1186 (Utah Ct. App. 2021) ("[A] claim need only have some logical or causal connection to the agreement to be related to it.").

Here, the arbitration provision's language is extremely broad, covering "any current or future claim, dispute or controversy relating to [Plaintiff's] Accounts [or] … any agreement or relationship" between Plaintiff and Defendant. Doc. 29-2 at 16. The Court finds that this broad language would cover any dispute about whether Plaintiff opened a particular account with Defendant or instead whether Plaintiff's identifiers were fraudulently used to open such an account, as such a dispute "relates to" the relationship between Plaintiff and Defendant. Even if that did not suffice on its own to make this dispute arbitrable, this dispute also relates directly to the Personal Account, given that the complaint alleges that Defendant violated the Electronic Fund Transfer Act by linking Plaintiff's external bank account (which Plaintiff had provided to make payments on the Personal Account) to the Business Account and then making withdrawals for the benefit of the Business Account. In other words, Plaintiff's claim relates to Defendant's misuse of information provided as part of Plaintiff's use of the Personal Account, and thus "relates to" Plaintiff's Personal Account. This dispute further relates to the Personal Account because Plaintiff will need to show that Defendant was unreasonable when it concluded that the similarity of identifiers used to open the Personal and Business Accounts meant the two accounts

were both opened by Plaintiff. *See Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) (finding company conducted reasonable investigation under circumstances for similar Federal Credit Reporting Act obligation when it verified name, address, and date of birth). These connections sufficiently demonstrate that these claims are related to both the Personal Account and the relationship between Plaintiff and Defendant and therefore fall within the scope of the arbitration provision.

## CONCLUSION

Because the parties formed a valid, written agreement to arbitrate, this dispute falls within the scope of that agreement, and Plaintiff has refused to arbitrate, Defendant's motion to compel arbitration and stay proceedings is granted. The parties shall file a status report within fourteen days of the conclusion of the arbitration proceedings or by January 6, 2027, whichever occurs sooner.

Dated: April 6, 2026

_____
APRIL M. PERRY
United States District Judge

8